**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE GLAZIERS LOCAL UNION NO. 27 PENSION AND RETIREMENT PLAN | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: |
| v. | ) ) ) | Judge |
| STEWART C. MILLER CO., INC., and STEWART C. MILLER, Individually | ) ) ) | Magistrate Judge |
| Defendants. | ) ) | |

**COMPLAINT FOR BREACH OF ERISA FIDUCIARY DUTY,**
**INJUNCTIVE RELIEF, CO-FIDUCIARY LIABILITY, WRIT OF ATTACHMENT,**
**PROFESSIONAL NEGLIGENCE AND BREACH OF CONTRACT**

NOW COME the Plaintiffs, TRUSTEES OF THE GLAZIERS LOCAL UNION NO. 27

PENSION AND RETIREMENT PLAN and complain against STEWART C. MILLER CO.,

INC. and STEWART C. MILLER, Individually, collectively referred to as the "Miller

Defendants" as follows:

**NATURE OF ACTION**

1.      Stewart C. Miller Co., Inc. (Miller Corporation) and Stewart Miller, Individually,

are subject to the Employee Retirement Income and Security Act of 1974, as amended (ERISA).

The Miller Defendants misappropriated Plan assets through numerous and substantial transfers

of ERISA Plan assets to JOSE LUIS GONZALEZ, JR. continuing and ongoing monthly since

June 1, 2013 to September 22, 2021 totaling $154,592.46 without direction or authorization by

Plaintiffs, exercising authority and control over the assets of the ERISA governed Plan and held

1

fiduciary status as to the Plan under ERISA. The Miller Defendants took no action to protect Plaintiffs' ERISA Plan assets.

2.     At all relevant times, the Miller Defendants were fiduciaries with respect to the Plan, and therefore, owed the highest duties known in the law to the Plan and the Plan participants. But instead of acting in the exclusive interests of the Plan and the Plan participants, the Miller Defendants paid out money not authorized under the terms of the Plan. In doing so, the Miller Defendants breached their fiduciary duties of loyalty and prudence under ERISA with respect to the Plan and the Plan participants, and engaged in transactions that ERISA strictly prohibits.

3.     Plaintiffs seek that the Miller Defendants repay $154,592.46 unilaterally transferred from the Plan, with lost earnings and interest. These amounts will increase between filing of this lawsuit and judgment. Plaintiffs seek a writ of attachment of any property or the Plan assets in the Defendant Miller's possession or control, in an amount necessary to secure the Miller Defendants' debt to Plaintiffs. Plaintiffs seek this attachment to prevent further damage to the Plan.

## JURISDICTION AND VENUE

4.     Federal question jurisdiction exists pursuant to 28 U.S.C. 1331 involving a federal question under ERISA, under 29 U.S.C. 1332(e)(1) to remedy a fiduciary breach arising under 28 U.S.C. 1109.

5.     Diversity jurisdiction under 29 U.S.C. 1332(a)(1) exists between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     Pursuant to 28 U.S.C. 1367 supplemental jurisdiction exists over state law claims that are so related to the Federal ERISA claim that they form part of the same case or controversy.

7.     Venue is proper in the Northern District of Illinois pursuant to ERISA, 29 U.S.C. 1132(e)(2) where the Plan is administered and where the breach took place.

(a)     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b)(2) where a substantial part of the events giving rise to the claim occurred and where the property that is subject to the claim is situated and the contract executed.

## PARTIES

8.     Plaintiffs are the Trustees and Fiduciaries of the Glaziers Union Local 27 Pension and Retirement Fund, a jointly managed ERISA multi-employee Pension Benefit Plan, established under 29 U.S.C. 1002(2)(A) and have standing to sue under 29 U.S.C. 1132(a)(2) for appropriate relief for breach of fiduciary duty under 29 U.S.C. 1109.

9.     The Trustees are all residents of the State of Illinois, the Trust is administered in Lyons, Illinois,  holds meetings in Berkeley, Illinois, its Fund assets are managed in Chicago, Illinois and the Fund banks in Chicago, Illinois.

10.     Defendant, Stewart C. Miller Co., Inc., is an Indiana corporation with its principal place of business in Indiana.

11,     Defendant, Stewart C. Miller, is the President, Secretary, Director and Registered Agent of Stewart C. Miller Co. and is a resident of the State of Indiana.

12.     The corporation has, by contract, acknowledged that it is an ERISA fiduciary defined at 29 U.S.C. 1104.  (Exhibit A, Paragraph 11).

## FACTS COMMON TO ONE OR MORE COUNTS

13.     The Trustees and the Miller Corporation entered into a Third Party

Administration contract on August 1, 2002 which remained in effect until September 30, 2014

(Exhibit A).

14.     Pursuant to that agreement, the Miller Corporation undertook various duties

wherein it exercised independent discretion regarding administration and payment of Plan assets

to retirees and beneficiaries.

15.     The Miller Corporation acknowledged that its duties as third party administrator

would be performed, with care, skill. prudence and diligence under the circumstances that a

prudent person acting in a like capacity and familiar with such matters would use under similar

circumstances (Exhibit A, Paragraph 14).

16.     Jose Gonzalez, Sr., a Pension Plan participant under 29 U.S.C. 1002(7), received

pension payments beginning June, 2003 through the month of his death in October, 2003.

17.     Thereafter his 29 U.S.C. 1002(8) beneficiary, JOSE LUIS GONZALEZ, JR., was

entitled to receive the remaining balance of a 10 year certain pension benefit of $1,561.14 per

month terminating on May 31, 2013.

18.     Defendant Miller Corporation on October 27, 2003 gave JOSE LUIS

GONZALEZ, JR. written notice (Exhibit B) that as beneficiary he would receive payments of

$1,561.14 per month effective November 1, 2003 through May 31, 2013.

19.     The Miller Corporation failed to:

    (a)     diary the payment cutoff date of May 31,2013.

    (b)     Failed to annually review and monitor pension accounts to make
            sure payments were proper in accordance with the terms of the Plan.

4

    (c)     Failed to notify the Trustees and beneficiary of the cutoff date after May 31, 2013.

    (d)     Failed to take reasonable steps to detect its over payment error.

    (e)     Failed to take any action to stop payment for over eight years.

    (f)     Failed to take any action to recoup the improper monthly payments negligently made after May 31, 2013.

    (g)     Failed to preserve Plan assets.

    (h)     Failed to exercise reasonable care.

20.    The Miller Corporation paid out Fund assets over which it had control for eight years and three months beyond May 31, 2013.

21.    The Miller Corporation notified the Plaintiffs of its breach on September 22, 2021.

22.    Stewart C. Miller Co., Inc. ceased being the Pension Fund Third Party Administrator on September 30, 2021. But for the review of records for the transition to the new administrator, the payment error might not ever been discovered.

23.    Defendant Stewart C. Miller Co., Inc. is a corporation organized and existing under the laws of Indiana, with its principal place of business at Lafayette, Indiana. At all relevant times, Stewart C. Miller Co., Inc., was the Plan's third-party administrator and record keeper. Stewart C. Miller Co., Inc. was a fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because it exercised authority and control respecting management or disposition of the Plans' assets. See *Chao v. Day*, 436 F.3d 234, 235 (D.C. Cir. 2006) (finding a third-party service provider who misappropriated the assets of an ERISA plan was a fiduciary under ERISA because he exercised "authority or control over the disposition of the plans assets," and that in "order to qualify as a fiduciary with respect to a

5

plan's assets, a person must simply exercise any authority or control over their management or disposition.") (internal quotations marks omitted); *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002) (finding that the "term 'fiduciary' is liberally construed in keeping with the remedial purpose of ERISA," and a "'fiduciary' should be defined not only by reference to particular titles, . . . but also by considering the authority which a particular person has or exercises over an employee benefit plan."). At all relevant times, Stewart C. Miller Co., Inc.'s contract Administration Agreement acknowledged it is an ERISA fiduciary with respect to the Plan.

24.     The Miller Corporation is a third party administrator to the Pension Plan as specifically designated by the terms of the contract between Miller and the Plan (Exhibit A).

25.     The Miller Corporation is a party in interest to the Plan as defined in ERISA, 29 U.S.C. 1002(14)(B) as a person providing services to the Plan.

26.     Defendant Stewart C. Miller, Individually, is an individual residing in Lafayette, Indiana and is an Owner, President, Secretary and Chief Executive Officer and 10% or more Shareholder of Stewart C. Miller Co., Inc.. Stewart C. Miller was a *de facto* fiduciary with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because he exercised discretionary authority and control respecting management or disposition of the Plans' assets. At all relevant times, Stewart C. Miller was a "party in interest" to the Plans pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) and (H), because he provided services to the Plans. Stewart C. Miller is a party in interest to the Plan as 10% shareholder of Stewart C. Miller Co., a service provider to the Plan.

27.     Pursuant to 29 U.S.C. 1104, ERISA codified the common law fiduciary standard of care that requires that a fiduciary act (A) as a prudent person to discharge duties with respect to a plan, solely in the interest of the plan; (B) with the care, skill, prudence and diligence under

the circumstances of a prudent man; and (D) in accordance with the documents and instruments governing the plan.

28.     Miller Defendants were never authorized or instructed in any manner by the Plaintiffs or the Plan to make transfers of Plan assets and to continue paying JOSE LUIS GONZALEZ, JR. past the  May 31, 2013 termination date established under the Pension Plan, a plan document.

29.     Miller Defendants' roles in making the improper transfers of funds out of the Plan's accounts held by Miller Defendants and Miller Defendants' failure to take any action to protect the Plan's assets, is a breach of its/their fiduciary duties to the Plan and the participants in the Plan.

a.     Stewart C. Miller, Individually as a party in interest to the Plan, participated in the fiduciary breach of the Miller Corporation of which he was the principal officer and shareholder.

## FIRST CLAIM FOR RELIEF

(Against the Miller Defendants for Damages for Breach of Fiduciary Duty of Loyalty, ERISA §502(a)(2), 29 U.S.C. §1102(a)(2))

30.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

31.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(a), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of (i) providing benefits to participants and their beneficiaries, and (ii) defraying reasonable expenses of administering the plan.

32. At all relevant times, the Miller Defendants were fiduciaries with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised authority and control respecting management or disposition of the Plans' assets. See Day, 436 F.3d at 235); *Bannistor*, 287 F.3d at 401.

33. The Miller Defendants exercised authority and control over the Plans' assets by continuing to make monthly payments of Plan assets to JOSE LUIS GONZALEZ, JR. when not due or authorized. This exercise of authority and control over the Plans' assets, and the Miller Defendants' misappropriation of the Plan's funds paid to JOSE LUIS GONZALEZ, JR., after June 1, 2013 requires that the Miller Defendants be deemed fiduciaries under ERISA as so acknowledged by contract.

34. Between June 1, 2013 and September 22, 2021, the Miller Defendants paid from Plan assets and improperly transferred funds from Fund accounts to JOSE LUIS GONZALEZ, JR., which was neither a proper payment of benefits to a participant or beneficiary nor a cost of administration.

35. In creating, orchestrating, facilitating, and/or participating in this transfer of Plan assets, the Miller Defendants violated the terms of the Plan and their fiduciary duty of loyalty to act solely in the interest of the Plan participants. By virtue of these breaches of the fiduciary duty of loyalty, the Plan was damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 , plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## SECOND CLAIM FOR RELIEF

(Against the Miller Defendants for Damages for Breach of Fiduciary Duty of Prudence,
ERISA §502(a)(2), 29 U.S.C. §1102(a)(2))

36.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

37.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), provides that a fiduciary shall discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38.     At all relevant times, the Miller Defendants were fiduciaries with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised authority and control respecting management or disposition of the Plans' assets. See Day, 436 F.3d at 235); *Bannistor*, 287 F.3d at 401.

39.     The Miller Defendants exercised authority and control over the Plans' assets by improperly paying JOSE LUIS GONZALEZ, JR. $1,5461.54 monthly from the assets of the Plan for in excess of eight years from June 1, 2013 to September 22, 2021. This exercise of authority and control over the Plan's assets, and the Miller Defendants' misappropriation of the Plan's funds, requires that the Miller Defendants be deemed fiduciaries under ERISA.

40.     Between June 1, 2013 and September 22, 2021, the Miller Defendants paid roughly $154,592.46 from the Plan without authority.

41.     In creating, orchestrating, facilitating, and/or participating in these payments, the Miller Defendants violated the terms of the Plan and their fiduciary duty of prudence to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

42.     By virtue of these breaches of the fiduciary duty of prudence, the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## THIRD CLAIM FOR RELIEF

(Against the Miller Defendants for Damages for Breach of Fiduciary Duty to Administer the
Plan in Accordance with its Governing Documents and Instruments,
ERISA §502(a)(2), 29 U.S.C. §1102(a)(2))

43.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

44.     ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), provides that a fiduciary shall discharge his or her duties with respect to a plan in accordance with the documents and instruments governing the Plan.

45.     At all relevant times, the Miller Defendants were fiduciaries with respect to the Plans pursuant to ERISA §§ 3(21)(A), 402, 29 U.S.C. §§ 1002(21)(A), 1102, because they exercised authority and control respecting management or disposition of the Plans' assets. See Day, 436 F.3d at 235); Bannistor, 287 F.3d at 401.

46.     The Miller Defendants exercised authority and control over the Plans' assets by improperly paying JOSE LUIS GONZALEZ, JR. $1,5461.54 monthly from the assets of the Plan for in excess of eight years from June 1, 2013 to September 22, 2021. This exercise of authority and control over the Plan's assets, and the Miller Defendants' misappropriation of the Plan's funds, requires that the Miller Defendants be deemed fiduciaries under ERISA.

47.     Between June 1, 2013 and September 22, 2021, the Miller Defendants paid roughly $154,592.46 from the Plan without authority.

48.     In creating, orchestrating, facilitating, and/or participating in these payments, the Miller Defendants did not act in accordance with the documents and instruments governing the Plan that required that the payment of benefits to JOSE LUIS GONZALEZ, JR. terminate with the May 31, 2013 payment and not continue thereafter. Thus, the Miller Defendants violated the terms of the Plan and their fiduciary duty to act in accordance with the documents and instruments governing the Plan.

49.     By virtue of these breaches of the fiduciary duty of prudence, the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## FOURTH CLAIM FOR RELIEF

(Against the Miller Defendants for Surcharge, ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3))

50.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

51.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a fiduciary may bring a civil action to "(A) ... enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

52.     During the time of the divided bench between law and equity, courts sitting in equity "possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'" *CIGNA Corp. v. Amara*, 563 U.S. 421, 441–42 (2011).

53.     This "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." Id. The surcharge remedy "fall[s] within the scope of the term 'appropriate equitable relief' in § 502(a)(3)." Id.

54.     The Miller Defendants exercised authority and control over the Plan's assets by improperly paying JOSE LUIS GONZALEZ, JR. unauthorized payments from the Plan. This exercise of authority and control over the Plan's assets amounts to misappropriation of the Plan's funds, requires that the Miller Defendants be deemed fiduciaries under ERISA.

55.     Between June 1, 2013 and September 22, 2021, the Miller Defendants transferred $154,592.46 from the Plan without authorization and contrary to the terms of the Plan.

56.     Plaintiffs and the Plan participants must be compensated for the loss resulting from the Miller Defendants' breaches of fiduciary duty in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## FIFTH CLAIM FOR RELIEF

(Against the Miller Defendants Inclusive, for Co-Fiduciary Liability)

57.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

58.     ERISA § 405(a), 29 U.S.C. §1105(a), provides that, "[i]n addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)     if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)     if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

59.     The Miller Defendants exercised authority and control over the Plans' assets by improperly making monthly payments to JOSE LUIS GONZALEZ, JR. from Plan assets for eight years and four months past the May 31, 2013 benefit cut-off date.

60.     Between June 1, 2013 and September 22, 2021, the Miller Defendants misappropriated roughly $154,592.46 from the Plan. As a result of these activities, the Miller Defendants breached their fiduciary duties of prudence and loyalty.

61.     Each of the Miller Defendants knowingly participated in, enabled, and failed to make reasonable efforts to remedy the other Defendants' breaches of fiduciary duty despite

knowledge of their breaches. And each of the Miller Defendants knew or should have known that the Plan only allowed distributions to participants or beneficiaries in the event of retirement, disability, or death.

62.     Each of the Miller Defendants, therefore, knew that the other Defendant was failing to discharge its/his fiduciary obligations in accordance with the Plans' terms and ERISA.

63.     To the extent that any of the Miller Defendants are not deemed to be fiduciaries, or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Miller Defendants are liable for these breaches of fiduciary duty, since such Miller Defendants knowingly participated in the fiduciary breaches as an ERISA party in interest to the breaching fiduciary.

64.     By virtue of these breaches of fiduciary duty, the Plan was damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## SIXTH CLAIM FOR RELIEF

(Against the Miller Defendants Inclusive, for Writ of Attachment)

65.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

66.     Plaintiffs seek a writ of attachment based on the extreme circumstances involving the Miller Defendants' reckless conduct, and the indeterminate status of the solvency of Stewart C. Miller Co., Inc. and Miller Defendants. A writ of attachment is required to prevent further loss to the Plan and ensure recovery of the participants' retirement benefits.

67. Federal Rule of Civil Procedure 64, which is applicable here pursuant to 735 ILCS 5/4-101 provides that in a civil action "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of [a] potential judgment.' Plaintiffs seek a writ of attachment under 735 ILCS 5/4-101.

68. Under Illinois law, "it is possible for a plaintiff to obtain a writ of attachment against a defendant's property to secure the plaintiff's debt before a court issues a judgment."

69. A writ of pre-judgment attachment is available to a plaintiff in a suit if: "(1) the defendant creditor having a money claim whether liquidated or un-liquidated and whether sounding in contract or tort either at the time of commencement of the action or thereunder, when the claim excess $20; (2) the attachment is not sought for the purpose of injuring or harassing the defendant; (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and (4) specific grounds for the writ to exist in any one of the following.

      (1)    the defendant is not a resident of this State or is a foreign corporation or is acting as such;

70. Under Illinois law, "a plaintiff may obtain a writ of attachment by filing an affidavit (or offering other evidence) that satisfies each of the elements above establishes the amount that the plaintiff demands." Id.. "If granted, a writ of attachment 'creates a lien from the date of levy on the real property attached, on the personal property held by the attaching officer, and on the proceeds of any attached personal property

71. Plaintiffs seek a temporary and immediate injunction for an attachment against any of the Plan's assets that the Miller Defendants hold or the equivalent sum of the direct amount of the loss $154,592.46.

15

## SEVENTH CLAIM FOR RELIEF

(Against Stewart C. Miller Co., Inc. Inclusive, for Common Law Professional Negligence)

72.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

73.     "Under Illinois law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury."

74.     To "establish liability for professional negligence, the plaintiff must show the existence of a duty, a breach of that duty, and damages arising from the breach." The "duty owed by a professional to his client derives from their contractual relationship and requires that the professional use the skill and care in the performance of his duties commensurate with the requirements of his profession. "In an action for professional negligence, the question whether a defendant owes a duty to the plaintiff is a question of law." "[w]hile all individuals owe a duty to exercise reasonable care to avoid foreseeable injury to others, professionals, by virtue of their special skill and expertise, are held to a higher standard of reasonable care.").

75.     Between June 3, 2013 and September 22, 2021, Stewart C. Miller Co., Inc. caused the improper payment of roughly $154,592.46  from the Plan to JOSE LUIS GONZALEZ, JR.. Stewart C. Miller Co., Inc. failed to diary the May 31, 2013 stop date, monitor accounts or take any steps to recoup monthly over payments paid out after May 31, 2013 and failed to discover its error for over eight years.

76.     Plaintiffs and Plan participants relied on Stewart C. Miller Co., Inc.'s expertise in plan administration per Exhibit A to properly administer and pay out benefits in accordance with the terms of the Plan.  Stewart C. Miller Co., Inc. breached the high standard of professional care it owed to Plaintiffs and the Plan. Plaintiffs and the Plan were severely damaged as the direct proximate result of Miller Defendants' breaches.

77.     By virtue of these breaches, Plaintiffs and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46  plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

78.     Stewart C. Miller Co., Inc. failed to exercise reasonable care and competence in payouts and obtaining and communicating accurate information about the unlawful payments made to JOSE LUIS GONZALEZ, JR. from Plan assets or disclose same to Plaintiffs.

79.     By virtue of Stewart C. Miller Co., Inc.'s failure to exercise reasonable care and competence, Plaintiffs and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon which averaged a 13% a year return each year over the eight year period.

## EIGHTH CLAIM FOR RELIEF

(Against the Miller Defendants for Common Law Negligence)

80.     Plaintiffs incorporate the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

81.     Under Illinois law, "[t]o sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach."  A breaching party's "conduct may often ostensibly implicate both contractual obligations and various tort duties."

82. A party may state a negligence claim sounding in tort "when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." Id.. In this circumstance, the "nature of the injury most often determines which duty or duties are breached." The injury would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort."

83. The Miller Defendants had authority and control over the disposition of the Plans' assets. By virtue of this authority and control, the Miller Defendants owed Plaintiffs and the Plans a duty of care by virtue of their responsibility for the Plans' assets which it breached.

84. The Miller Defendants acted negligently in paying and failing to monitor payments causing the Plan injury.

85. By virtue of these breaches, Plaintiffs and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon.

86. By virtue of the Miller Defendants' failure to exercise reasonable care and competence, Plaintiffs and the Plans were damaged in an amount to be shown according to proof, but in the amount of at least $154,592.46 plus lost earnings and interest thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor as follows:

1. On Plaintiffs' causes of action for ERISA and common law breach of fiduciary and professional malpractice and Claims for Relief, for losses to the Plan seeks an accounting of

18

all sums improperly paid out after May 31, 2013, restitution of such sums, plus lost earnings and interest thereon to make the Plan whole.

2.   On Plaintiffs' Sixth Claim for Relief, for an injunction: (i) enjoining the Miller Defendants from further transferring, disposing of, or otherwise dealing in any of the Plans' assets, (ii) ordering the Miller Defendants, and each of them, to return any assets transferred from the Plan back to the Plan.

3.   On Plaintiffs' ERISA Counts for Relief, for an award of Plaintiffs' reasonable attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

4.   On Plaintiffs' Sixth Claim for Relief, a temporary injunction ordering a writ of attachment against any property under the Miller Defendants' custody or control, and any of the Plans' assets that the Miller Defendants received through breach, to secure debt that the Miller Defendants owe to Plaintiffs in the amount of at least $154,592.46 plus lost earnings and interest thereon;

5.   On Plaintiffs' Seventh Claim for Relief, for damages in the amount of at least $154,592.46 plus lost earnings or interest thereon, and exemplary damages in twice that amount.

6.   On Plaintiffs' Eighth Claim for Relief, for damages in the amount of at least $154,592.46, plus lost earnings and interest thereon, attorneys' fees and exemplary damages in twice that amount.

7.   On all of Plaintiffs' Claims for Relief:

a.   For costs of suit herein; and

b.   For such other and further equitable and remedial relief as the Court may deem appropriate.

TRUSTEES OF THE GLAZIERS LOCAL
UNION NO. 27 PENSION AND
RETIREMENT PLAN

s/Donald D. Schwartz
ARNOLD AND KADJAN, LLP
35 E. Wacker Drive, Suite 600
Chicago, IL 60601
Telephone No.:  (312) 236-0415
Facsimile No.:  (312) 341-0438
Dated:  October 29, 2021

# EXHIBIT A

# STEWART C. MILLER & CO., INC.

## CONTRACT ADMINISTRATION AGREEMENT

THIS AGREEMENT made this 1st day of August, 2002, by and between the Trustees of the Glaziers' Union Local 27 Pension and Retirement Plan (hereinafter referred to as the "TRUSTEES") under an Agreement and Declaration of Trust dated February 1, 1999, herein referred to as "Trustees," and STEWART C. MILLER & CO., INC., herein referred to as "Fund Administrator."

**WITNESSETH:**

IN CONSIDERATION of the mutual promises hereinafter set forth, it is mutually agreed as follows:

1.  The Trustees not individually but as Trustees of the GLAZIERS UNION LOCAL 27 PENSION AND RETIREMENT PLAN, hereby hire STEWART C. MILLER & CO., INC., as Fund Administrator for the Pension Fund, effective August 1, 2002 and running through July 31, 2003, subject to the right of the Trustees to terminate this Agreement at any time upon written notice to the Fund Administrator.

2.  In performing its services under this Agreement, the Fund Administrator shall, together with all additional appropriate provisions provided in Exhibit A:

    (a)  Attend all regular, and a minimum of one special meeting, of the Trustees, prepare and send notices and agenda for meetings and record, and distribute minutes of these meetings.

    (b)  Assist all committees of the Pension Fund in connection with their financial, administrative and technical assignments.

    (c)  Assist the Pension Fund's certified public accountant on auditing matters, reports and/or filings required by law, ERISA, PBGC and the IRS.

    (d)  Assist the Pension Fund's legal counsel on legal matters.

    (e)  Maintain a comprehensive record of statistical information necessary to determine the benefit amount and type of pension.

    (f)  Become familiar with all eligibility rules and provisions of the Plan and in the event that questions of law or fact arise, they are to be reviewed by the Fund Administrator and submitted to the Pension Fund for final approval.

    (g)  Design and update all informative material necessary to provide proper communication between the Trustees, participants and beneficiaries of the Plan.

    (h)  The Fund Administrator will, upon request for pension benefits, supply application forms with instructions for its completion. Upon return of

**EXHIBIT**

**A**

completed application, the Fund Administrator will examine and if information is incomplete, the Fund Administrator shall seek to obtain missing information immediately. After a completed file is established, calculate benefit amount, submit to the Plan's actuary for review and then to the Trustees for their approval.

3.  It is further agreed that all records maintained by the Fund Administrator in connection with its performance of administrative services for the Fund, including all books, records, lists of names, forms, plates, seals, passbooks, journals, ledgers shall always remain the property of the Pension Plan. Upon termination of this Agreement, the Fund Administrator will transfer these records to whomever the Fund designates. It is further agreed that all data, stored information and reports prepared by the Fund Administrator are the property of the Fund. The Fund Administrator agrees to deliver to the Fund within 60 days of any request of the Fund at any time, whether before or after the termination of this Agreement, all of the stored information and data, within the possession of the Fund Administrator relative to the operation of the Fund, and any or all of the Fund's records in its possession. Such information and data will be delivered in printed form and in the form of storage media then in use by the Fund Administrator in connection with processing the Pension Fund's data. In addition to the foregoing, the Fund Administrator agrees to render all necessary assistance to the Trustees and their designee in identifying, understanding, decoding and utilizing said data and information, provided, however, that the Fund Administrator shall not be required to assist in the preparation of a computer program (except to the extent that the assistance hereinabove required to be performed by the Fund Administrator may be for the purpose of enabling others to prepare such a program), and further provided that all electronic data processing programs used by the Fund Administrator in completion of its administrative duties whether or not specifically developed for the Pension Fund shall be the property of the Pension Fund. It is understood that at this time the ~~Amalgamated Bank~~ currently uses ISSI, a licensed program, which will remain the property of ISSI. SCM ¢ CO. INC.

4.  It is further agreed that all information, records, lists of employers and employees and all other data which may come into the hands of the Fund Administrator are to be considered confidential and private records of the Pension Fund, and no information from such records, lists or data shall be divulged by Fund Administrator, unless authorized by the Trustees of the Welfare Fund.

5.  It is further agreed that the Fund Administrator shall become familiar with the Trust Agreement from which the Pension Plan was created and under which it operates, and that the Fund Administrator will conduct their activities as Administrators so as to carry out the purpose and intent of the Trust Agreement.

6.  This Agreement, and all acts, duties, obligations and responsibilities to be undertaken and performed under this Agreement, shall in all respects be subject to all of the provisions, expressed or implied of the Trust Agreement under which the Pension Plan was established.

7.  In the performance of their obligations under this Agreement, the Fund Administrator shall be governed by the rules, regulations, by-laws, and policy determinations issued by the Board of Trustees pursuant to the Trust Agreement.

8.  Stewart C. Miller & Co., Inc. shall be paid $2,750.00 per month for the services rendered herein. In addition, Stewart C. Miller & Co., Inc. shall be paid a one time set up fee of $1,750.00.

9.  The Fund Administrator agrees that it will immediately inform the Trustees of any set of facts which could be construed to be a violation of ERISA or applicable state and federal law of which the Fund Administrator becomes aware.

10. The Fund Administrator warrants that no persons in its employ currently are disqualified from serving benefit plans under ERISA Section 411. The Fund Administrator agrees that no such individuals will be hired during the course of this Agreement without notification to the Trustees and institution of necessary steps to isolate these persons from all matters related to the administration of the Fund.

11. The Fund Administrator acknowledges that in performing the services under this Agreement it will be acting in a fiduciary capacity for purposes of ERISA and that this contract provides a basis, in addition to statute, for a finding of a breach of fiduciary responsibility.

12. The Fund Administrator warrants to the Trustees that it possesses all necessary federal, state, and local registrations or licenses needed to provide the services set forth in this Agreement.

13. The Fund Administrator warrants that it will perform each of its duties under this Agreement solely in the interest of the Fund, its participants, and its beneficiaries.

14. The Fund Administrator warrants it will perform each of its duties under, this Agreement with care, skill, prudence, and diligence under circumstances that a prudent person acting in a like capacity and familiar with such matters would use under similar circumstances.

15. The Fund Administrator warrants that it does not accept commissions from any source and will not begin receiving commissions without notice to and agreement by the Trustees.

16. The Fund Administrator shall maintain an errors and omissions policy, a copy of which is reproduced in Appendix C or an equivalent or superior policy.

This Agreement shall remain in full force and effect beginning August 1, 2002 continuing through July 31, 2003. Thereafter, the Trustees shall have the option to extend this contract under the same terms and conditions as above for a one-year period unless 60 days prior written notice from the Fund Administrator has been submitted to the Trustees for the purpose of negotiating the contract terms and conditions. The Trustees may terminate this

Agreement at any time by giving written notice thereof to the Fund Administrator.

GLAZIERS UNION LOCAL 27
PENSION AND RETIREMENT PLAN

STEWART C. MILLER & CO., INC.

Chairman

By: _____ Pres.

Secretary

4

## EXHIBIT A

It is expressly agreed and understood that this Addendum be attached to and made a part of the Agreement between STEWART C. MILLER & CO., INC. (Company) and the GLAZIERS UNION LOCAL 27 PENSION AND RETIREMENT PLAN (Fund).

1.  The Company does hereby agree to perform the following administrative services in accordance with the provisions of the attached Agreement:

**A. FUND OFFICE**

1.  Operate and maintain a Fund Office, at the expense of the Company.

2.  Observe normal business hours of 8:00 A.M. through 4:30 P.M., Monday through Friday, except for generally recognized holidays. The Administrator agrees to maintain a toll-free telephone number.

3.  Staff the Fund Office with an adequate number of qualified personnel to perform the day to day administrative duties required and designate at least one qualified person as the Administrative Manager.

4.  Assist in the design of the Summary Plan Descriptions booklets, forms and announcement material necessary to provide proper communication between the Fund, when applicable, and the participants of the plan, "Assist" means that the Company will offer suggestions and ideas based on their expertise. Fund assumes financial responsibility for the printing and binding costs related to the physical formation of the Summary Plan Description booklets. Printing of Employer remittance reports shall be paid by the Fund.

5.  Provide postage for normal correspondence and annual statements of accrued benefits to participants. The Fund shall pay the cost of distribution of a Summary Plan Description Booklet.

JUL 18-02 07:37 FROM:STEWART C MILLER     ID:7654494338     PAGE   6/6

# ACORD. CERTIFICATE OF INSURANCE

DATE (MM/DD/YY) 06/11/02

**PRODUCER**

The Underwood Agency, Inc.
310 Ferry Street
P.O. Box 118
Lafayette    IN    47902-0118

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**COMPANIES AFFORDING COVERAGE**

| COMPANY A | Travelers Insurance |
| COMPANY B | |
| COMPANY C | |
| COMPANY D | |

**INSURED**

Stewart C. Miller Co. Inc.
c/o Linda Franklin
P.O. Box 5769
Lafayette    IN    479035769

## COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| | GENERAL LIABILITY | | __/__/__ | __/__/__ | BODILY INJURY OCC | $ |
| | COMPREHENSIVE FORM | | | | BODILY INJURY AGG | $ |
| | PREMISES/OPERATIONS | | | | PROPERTY DAMAGE OCC | $ |
| | UNDERGROUND EXPLOSION & COLLAPSE HAZARD | | | | PROPERTY DAMAGE AGG | $ |
| | PRODUCTS/COMPLETED OPER | | | | BI & PD COMBINED OCC | $ |
| | CONTRACTUAL | | | | BI & PD COMBINED AGG | $ |
| | INDEPENDENT CONTRACTORS | | | | PERSONAL INJURY AGG | $ |
| | BROAD FORM PROPERTY DAMAGE | | | | | |
| | PERSONAL INJURY | | | | | |
| | AUTOMOBILE LIABILITY | | | | BODILY INJURY (Per person) | $ |
| | ANY AUTO | | | | | |
| | ALL OWNED AUTOS (Private Pass) | | | | BODILY INJURY (Per accident) | $ |
| | ALL OWNED AUTOS (Other than Private Passenger) | | | | | |
| | HIRED AUTOS | | | | PROPERTY DAMAGE | $ |
| | NON-OWNED AUTOS | | | | | |
| | GARAGE LIABILITY | | | | BODILY INJURY & PROPERTY DAMAGE COMBINED | $ |
| | EXCESS LIABILITY | | | | EACH OCCURRENCE | $ |
| | UMBRELLA FORM | | | | AGGREGATE | $ |
| | OTHER THAN UMBRELLA FORM | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ |
| | THE PROPRIETOR/ PARTNERS/EXECUTIVE OFFICERS ARE: INCL EXCL | | | | DISEASE - POLICY LIMIT | $ |
| | | | | | DISEASE - EACH EMPLOYEE | $ |
| A | OTHER Commercial Crime | 103178760 | 05/28/02 | 05/28/03 | Blanket Crime Deductible | 500,000 10,000 |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

**CERTIFICATE HOLDER**

Issued by Underwood Insurance Agency

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL __10__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE

Connie Webber     _Connie Webber_

ACORD 25-N (3/93)         © ACORD CORPORATION 1993

# EXHIBIT B

## GLAZING EMPLOYERS AND GLAZIERS' UNION
## LOCAL NO. 27 HEALTH AND WELFARE FUND

## GLAZIERS UNION LOCAL NO. 27
## PENSION AND RETIREMENT PLAN

*2111 West Lincoln Highway, Merrillville, Indiana 46410*
*Phone (219) 769-6944 ● Toll-Free 1-800-759-6944*

October 27, 2003

Mr. Jose L. Gonzalez Jr.
8634 S. Linder Ave.
Burbank, IL 60459

Dear Mr. Gonzalez:

We extend to you and your family our sincere sympathy on the death of your father, Jose.

I have reviewed Fund records and confirmed that at the time of Mr. Gonzalez's retirement, effective June 1, 2003, the Ten Year Certain was elected.

Therefore, as his designated beneficiary, you are entitled to receive the remaining balance of the Ten Year Certain in the gross monthly amount of **$1,561.54**, effective November 1, 2003, the first of the month following the death of your father. Benefits will be paid through May 31, 2013. In order to begin your benefit, the enclosed Application for Beneficiary's Pension Form needs to be completed by you and returned to our office, together with a **Certified** Death Certificate for your father.

If you wish, your monthly pension benefit can be **wire transferred** to your account at a financial institution of your choice. For your convenience I am enclosing a form for this purpose should you want to elect the wire transfer option.

Also, in order to file for the **$10,000 Life Insurance** Benefit available on behalf of your father from the Glazing Employers and Glaziers' Union Local No. 27 Health and Welfare (Insurance) Fund, the enclosed Death Claim Form must be completed. A return envelope is enclosed for your convenience in returning to our office the signed, completed form **and a certified** death certificate for Mr. Gonzalez.

Should you have any questions regarding this matter, please do not hesitate to call me at toll-free 1-800-759-6944.

Cordially yours,

*Shelly Stone*

**SHELLY STONE**
Eligibility Coordinator

Enclosures - Application for Beneficiary's Pension
**Withholding Certificate for Pension Payments**
Authorization Agreement for Direct Deposit
**Death Claim Form**
Return Envelope

EXHIBIT
B